## CHANG SIM et al. v. WHITE, Immigration Com'r.

(Circuit Court of Appeals, Ninth Circuit. January 9, 1922.)

No. 3696.

1. **Evidence ⟨⟩366(5)—Board of special inquiry properly considered copy of report of a board of special inquiry filed with collector of another port.**

On application by a Chinaman for admission to the United States as a foreign-born son of a citizen, board of special inquiry had a right to receive and consider a sufficiently authenticated copy of a report of a board of special inquiry sitting at Manila, where each page was impressed with the seal of the Philippine customs office and appeared to be a regular official finding and report of a special board of immigration officials appointed by the collector, and was received and filed by the immigration authorities at San Francisco and credited as an official record by the Department of Labor, and was acted on by the executive branch of the government.

2. **Witnesses ⟨⟩271(3)—Report of board of special inquiry held admissible as proper foundation for cross-examination.**

On application by Chinese to be admitted as citizens, as foreign-born children of a citizen, a report of a board of special inquiry held some years before was admissible as proper foundation for cross-examination

of the alleged father, who was testifying as a witness, and with whom the report had to do, even though such report was not properly authenticated.

3. **Aliens ☞32(8)—Evidence held to sustain finding that applicants for admission were not sons of citizen.**

Evidence *held* to sustain decision of immigration officials that Chinese applicants for admission to the United States were not foreign-born sons of a citizen.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Habeas corpus proceeding by Chang Sim and another against Edward White, as Commissioner of Immigration for the Port of San Francisco, after their deportation was ordered. From an order denying the petition, petitioners appeal. Affirmed.

Geo. A. McGowan, of San Francisco, Cal., for appellants.

John T. Williams, U. S. Atty., of San Mateo, Cal., and Ben F. Geis, Asst. U. S. Atty., of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Appellants, Chang Sim and Chang Yet, seek admission to the United States, asserting that they are citizens, foreign-born sons of Waitong, whose citizenship is conceded. After hearings before a board of special inquiry admission was denied, and thereafter the Secretary of Labor dismissed their appeal, and deportation was ordered. To petition for writ of habeas corpus, filed in the District Court, demurrer was sustained, and from an order denying the petition appeal was taken.

The immigration records filed by stipulation disclose that Chang Sim arrived in San Francisco July 24, 1919, and applied for entry as the son of Waitong. Affidavits by Waitong and another Chinaman were filed in support of the applicant's affidavit. To the affidavit of Waitong there were attached photographs of himself and Chang Sim. By agreement Waitong, the alleged father, testified before an inspector, and the evidence with a report thereon was afterwards considered by the special board. Chang Sim appeared in person before a board of special inquiry. In due course in September, 1919, further examination of Waitong was had, and again Chang Sim was personally examined by the board. The cause for the further examination was the desire to gain information concerning an indorsement on the back of Waitong's naturalization certificate, which showed that as a citizen of the United States he had landed at Manila on the steamer Tean on June 22, 1906, and was accompanied by wife and family; also to inquire into the records of the alleged landing of Waitong at Honolulu in 1898 or 1899. Pending the gathering of the additional evidence, the applicant was paroled. The necessary information was received, and the board, not being satisfied that the applicant was the son of Waitong, deferred action "to allow the production of any additional evidence desired bearing on the relationship claimed." Counsel for applicant were notified, but no further evidence was produced, and on the ground that the relation-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ship claimed did not exist the applicant was held not entitled to enter.

Chan Yet, the other appellant, arrived at San Francisco November 30, 1919, and filed an affidavit of Waitong, together with appended photographs of himself and Waitong, and also affidavits of Wong Sing Chong and Chang Sim, applicant's alleged brother. Testimony was taken and several adjournments were had by the board of special inquiry to allow additional evidence of the claimed relationship of father and son. Counsel for applicant wrote that he had no further evidence, whereupon the board decided to exclude the applicant.

Appeals in both cases were taken, briefs in behalf of applicants were filed with the Secretary of Labor at Washington, and in a carefully prepared memorandum the record and other evidence was analyzed, and the conclusion reached that the status of the applicants was not established "to a degree sufficiently convincing to justify their admission as American citizens."

[1, 2] It is urged that the board of special inquiry had no right to receive or consider a copy of a report of a board of special inquiry at Manila, dated June 25, 1906, for the reason that there is lack of authentication of the report. Copy of the report is attached to an original letter addressed to the commissioner of immigration at San Francisco, and signed by the collector of customs at Manila, stating that he inclosed a copy of the complete record of the investigation into Chang Waitong's landing in Manila in 1906. Each page of the copy has been impressed by the seal of the Philippine customs office, and the document appears to be a regular official finding and report of a special board of immigration officials, appointed by the collector to inquire into a number of cases of Chinese passengers who arrived in Manila on the ship Tean on June 22, 1906. The documents were received and filed by the immigration authorities at San Francisco, and were credited as official records by the Department of Labor. Having become part of the official records of the case as acted upon by the executive branch of the government, we think they were sufficiently authenticated to be considered by the courts as part of the record in the case. But, however that may be, the report was shown the witness, and became admissible as proper foundation under rules for cross-examination in this way:

Included among the papers forwarded from Manila was the record of naturalization of Waitong, based upon citizenship in the Hawaiian kingdom, dated July 19, 1892. Upon the certificate there was a notation that Waitong landed in Manila with wife and family. Inasmuch as Waitong testified in 1919, before the board which examined into the cases of the present applicants, that in June, 1906, he was a passenger on the Tean from Hong Kong to Manila, and landed at Manila on June 22 of that year, as a citizen of the United States, and that he had gone to Manila on the Tean without any member of his family, it was entirely proper to show to him the notation on the back of his certificate of naturalization, which he obtained in Hawaii, and to ask what he had to say about the apparent inconsistency.

Waitong's explanation was that when he was going to Manila he made the acquaintance of three actresses who were on the ship, and without his knowledge or consent they claimed that he was husband and

father; that he did not wish to embarrass them by denying such relationship, and allowed the deception to pass; that he made no statement before the Manila board that the women were related to him, but was in the room when they told the inspector of their relationship; that he said nothing, as he did not want to make trouble for them; that he had no recollection of the names of the women, and signed no papers claiming that the women were connected with him; that the women were entitled to admission as actresses, but he feared they might be delayed until they were investigated, and for that reason they wished to appear as wife and daughters. There was no attempt by Waitong to deny that he entered Manila as a citizen of the United States, knowing that he was allowed to enter as accompanied by his wife and daughters.

[3] If there were nothing else in the case, we should not feel warranted in disturbing the conclusions of the executive authorities, in 1920, that Waitong was not entitled to be believed in his statements as to the paternity of the appellants. But there is more. Waitong now says that the photograph of Chan Yet, attached to his affidavit made in 1914 in the case of Chang Sim, was a mistake; that he trusted the matter to a Chinese lawyer, who said he would put the right photograph on the paper, but that the lawyer made a mistake, and put a wrong photograph, and gave the birthday of the second son, instead of the first. The conclusion of the authorities that Waitong had knowledge of this alleged mistake from the time it occurred is sustained and affords further ground for not believing his statement that he was the father of applicants. There were also discordant statements as to the ages of the appellants, which together with all the other evidence, was ample to sustain the decision of the immigration officials.

Appellants had a fair hearing, were represented by counsel, had every opportunity to produce witnesses, and have failed to show any abuse of discretion on the part of the executive officers, or error on the part of the District Court.

The order appealed from is affirmed.